1  Edward R. Hugo [Bar No. 124839]
   Shaghig D. Agopian [Bar No. 237947]
2  Charles S. Park [Bar No. 161430]
   HUGO PARKER, LLP
3  One Front Street, 26th Floor
   San Francisco, CA 94111
4  Telephone: (415) 808-0300
   Facsimile: (415) 808-0333
5  Email: service@HUGOPARKER.com

6  Attorneys for Defendant
   FOSTER WHEELER LLC

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 JOHN HUKKANEN and MARY          (ASBESTOS)
   HUKKANEN,
12                                  USDC Case No. _____
            Plaintiffs,
13                                  Los Angeles County Superior Court
        vs.                         Case No. BC651465
14
   AIR & LIQUID SYSTEMS
15 CORPORATION, a subsidiary of    DEFENDANT FOSTER WHEELER
   AMPCO-PITTSBURGH              LLC'S NOTICE OF REMOVAL
16 CORPORATION, individually and as
   successor by merger to BUFFALO
17 PUMPS, INC., individually and
   successor in interest to BUFFALO
18 FORGE, et al.,

19          Defendants.

20

21      TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT

22 COURT:

23      Pursuant to Title 28 U.S.C. sections 1442(a)(1) and 1446, Defendant FOSTER

24 WHEELER LLC (hereinafter "Defendant" or "Foster Wheeler") gives notice of

25 removal of an action filed against it in the Superior Court of California, County of

26 Los Angeles, to the United States District Court for the Central District of California.

27 In support, Defendant respectfully offers the following:

28

**Preliminary Matters**

1.      On or about February 22, 2017, Plaintiffs filed this lawsuit, entitled *JOHN HUKKANEN and MARY HUKKANEN v. AIR & LIQUID SYSTEMS CORPORATION, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC., individually and successor in interest to BUFFALO FORGE, et al.*, Case No. BC651465, against Foster Wheeler and other defendants in the Superior Court of California, County of Los Angeles. *See* Summons and Complaint attached hereto as Exhibit A.

2.      Plaintiffs served Foster Wheeler with the Summons and Complaint on February 27, 2017. The Complaint includes allegations that plaintiff John Hukkanen ("Mr. Hukkanen") was exposed to asbestos while serving as a machinist in the U.S. Navy aboard the USS Somers and USS Walke from approximately 1960 through 1968. *Id.*, Complaint, ¶ 7.

3.      Thus, this Notice of Removal is timely filed in that it is filed within thirty (30) days after Defendant's receipt of the Complaint from which it ascertained that this case is removable. 28 U.S.C. § 1446(b).

**Nature of the Case**

4.      The case is based on Plaintiffs' allegations that Mr. Hukkanen's asbestos-related disease, specifically mesothelioma, was caused by his exposure to asbestos dust and/or fibers.

5.      Plaintiffs assert causes of action for negligence, breach of express and implied warranties, strict liability, and loss of consortium against Foster Wheeler and the other defendants based on various theories.

**Grounds for Removal**

6.      This Notice of Removal is filed within thirty (30) days of Defendant's receipt of the Complaint from which it could ascertain that the case was removable. 28 U.S.C. § 1446(b). Foster Wheeler manufactured marine boilers and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed

HUGO PARKER, LLP
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER LLC'S NOTICE OF REMOVAL

by the U.S. Navy.  Foster Wheeler has confirmed that it manufactured the economizers on the USS Walke.  The basis for removal is that, in the manufacture and sale of boilers, economizers, and auxiliary equipment for the U.S. Navy, including all aspects of warnings associated with that equipment, Foster Wheeler was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

7.     Should Plaintiffs file a motion to remand this case, Defendant respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

8.     As recognized in a landmark decision by the United States District Court for the Eastern District of Pennsylvania (MDL-875) in *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770 (E.D. Pa. 2010), Defendant has a federal defense to this action.  In examining virtually identical evidence submitted in the case at bar, Judge Eduardo C. Robreno found that Foster Wheeler raised a colorable defense to plaintiff's failure to warn claims, *i.e.,* government contractor immunity from liability for injuries arising from any exposure to asbestos related to boilers and auxiliary equipment aboard Navy vessels, insofar as they were designed and manufactured by Foster Wheeler according to strict Navy specifications.  Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office.  *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

9.     In reaching his conclusion, Judge Robreno discussed in detail the three elements necessary for removal under this statute.  First, the defendant must demonstrate that it is a "person" within the meaning of the statute.  *Hagen, supra*, 739 F.Supp.2d at 776.  The definition of a "person" includes a corporation.  *Id.* Second, the defendant must raise a colorable claim to a federal law defense.  *Id.*  As

previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. *Id.* Third, the defendant must establish that the suit is for any act under color of federal office, i.e., there is a causal connection between the charged conduct and asserted official authority. *Id.* Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.*

10. The second and third elements require a substantial degree of direct and detailed federal control over defendant's work and a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Hagen, supra*, 739 F.Supp.2d at 776. Although set forth in the statute as two separate requirements, Judge Robreno recognized that the evidentiary similarities between the "acting under" and "causal nexus" prongs have often prompted courts to collapse them into one single requirement. *Id.* at 784 [*citing Good v. Armstrong World Indus., Inc.* 914 F.Supp. 1125, 1128 (E.D. Pa. 1996) ("The 'acting under' language in the statute forces [the defendant] to show a causal nexus between the plaintiff's claims and the conduct taken pursuant to direction from a federal officer.")].

11. What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Like the Eastern District of Pennsylvania in *Hagen*, federal courts across the country, including this Court, have upheld removal because defendants were sued as a result of designing and manufacturing products pursuant to detailed and strict military specifications. *See, e.g., Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) (plaintiff's failure-to-warn claims and defendant's government contractor defense is one for the federal and not state court to decide); *Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014) (evidence of Navy's detailed and comprehensive specifications regarding all aspects of defendant's products warranted removal); *Ruppel v. CBS Corporation*, 701 F.3d

1176 (7th Cir. 2012) (reversing lower court decision to remand and finding removal proper where Westinghouse established through affidavits that it had a colorable government contractor defense to plaintiff's claims); *McMann v. Air & Liquid Sys. Corp.,* 2014 WL 1794694 (W.D. Wash. 2014) (defendants established by preponderance of the evidence that they performed acts at direction of Navy and while performing government-prescribed duties).

12.     As detailed in *Hagen,* critical to the defendant's evidence is whether defendant has demonstrated sufficient facts establishing that its government contractor defense is "colorable"[1] or "plausible."  *See Hagen, supra*, 739 F.Supp.2d at 780.  In the context of a "failure to warn" case, the defendant need not show that the Navy expressly barred or broadly preempted the inclusion of asbestos warnings on its products.  *Id.; see also Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431 (5th Cir.), *cert. denied*, 531 U.S. 919 (2000) (government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: (1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; (2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and (3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government).  *Kerstetter, supra,* 210 F.3d at 438.

13.     As stressed in *Kerstetter,* "[t]he government need not prepare the specifications to be considered to have approved them."  *Id.* at 435.  The only material issue is whether the manufacturer's designs and specifications were

---

[1] The *Hagen* court distinguished the showing of a "colorable" defense required for removal from the ultimate evidentiary showing at trial, and ruled that the colorable defense standard for purposes of removal "is not an onerous one to satisfy."  *Hagen, supra,* 739 F.Supp.2d at 780.  Thus, "a defense is colorable for purposes of determining jurisdiction under Section 1442 (a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial."  *Id.* at 783.

subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "'continuous back and forth' between the contractor and the government." *Id.* In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.* at 438.

14.     The present case is substantially similar, if not identical, to *Kerstetter* and *Hagen, supra*. With respect to Foster Wheeler, J. Thomas Schroppe explains:

> The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers … The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent directed by the Navy.
>
> Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

*See* Affidavit of J. Thomas Schroppe, attached hereto as Exhibit B, at ¶¶ 21 and 22.

15.     Thus, as established by the MDL court in *Hagen,* the affidavit provided in this case is more than sufficient to establish "Federal Officer" jurisdiction, as well

HUGO PARKER, LLP
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

DEFENDANT FOSTER WHEELER LLC'S NOTICE OF REMOVAL

as a colorable defense under the "Government Contractor" doctrine. Nowhere is it required that a defendant produce physical contracts to prove the Navy's extensive direction and control over product specifications to satisfy the requirements of section 1442(a)(1). To promote judicial efficiency and consistency, the central purpose behind MDL-875, this Court should defer to the decision made by the MDL court in *Hagen*, and uphold removal.

16.     A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of section 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960).

17.     A removing defendant is not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiffs' action as a whole under section 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994).

18.     As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon Defendant are being filed with this Notice of Removal.

## Conclusion

19.     Removal of this action is proper under 28 U.S.C. § 1442, because it is a civil action brought in a state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442(a)(1) because this Defendant was acting under an officer or agency of the United States.

WHEREFORE, FOSTER WHEELER LLC, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, removes this action for trial from the Superior Court of California, County of Los Angeles.

1    Dated:  March 22, 2017         HUGO PARKER, LLP

2

3                    By:  /s/ Charles S. Park_____
                      Edward R. Hugo

4                       Shaghig D. Agopian
                      Charles S. Park

5                       Attorneys for Defendant
                      FOSTER WHEELER LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

*handwritten:* 10 of 53 435
3-3-17

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

FEB 22 2017

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

NOTICE TO DEFENDANT: AIR & LIQUID SYSTEMS CORPORATION [see
*(AVISO AL DEMANDADO):* Additional Parties Attachment]

YOU ARE BEING SUED BY PLAINTIFF: JOHN HUKKANEN, an individual;
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* MARY HUKKANEN, an
individual;

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of Los Angeles 111 North Hill Street Los Angeles, California 90012 | CASE NUMBER: *(Número del Caso):* BC 651465 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Benno Ashrafi, WEITZ & LUXENBERG, P.C.
1880 Century Park East, Suite 700, Los Angeles, CA 90067

SHERRI R. CARTER

| DATE: *(Fecha)* | FEB 22 2017 | Clerk, by *(Secretaria)* | SHAUNYA BOLDEN (310) 247-0921 | Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Foster Wheeler, LLC, as successor in interest to Foster Wheeler Corporation and Foster Wheeler Energy Corporation

   under: ☑ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

RECEIVED
FEB 2 7 2017

Fred Wolsky

SUMMONS

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
WestLaw Doc & Form Builder

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hukkanen v. AIR & LIQUID SYSTEMS CORPORATION, et al. | |

INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
   Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

AIR & LIQUID SYSTEMS CORPORATION, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC., individually and successor in interest to BUFFALO FORGE;
ALBAY CONSTRUCTION CO.;
ALLIED FLUID PRODUCTS CORP. individually and as successor in interest to ALLIED PACKING & SUPPLY, INC.;
ALLIED PACKING & SUPPLY, INC.;
ATLANTIC RICHFIELD COMPANY;
AURORA PUMP COMPANY;
BLACKMER PUMP COMPANY;
BORGWARNER MORSE TEC LLC as successor by merger to BORG-WARNER CORPORATION;
BROADSPECTRUM DOWNSTREAM SERVICES, INC. individually and as successor in interest to TIMEC COMPANY, INC. and THE INDUSTRIAL MAINTENANCE ENGINEERING CONTRACTING COMPANY;
BW/IP, INC., individually and as successor in interest to BYRON JACSON PUMP CO.;
CBS CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in interest to BF STURTEVANT;
CHEVRON U.S.A. INC. (sued individually and as successor-in-interest to GULF OIL CORPORATION, TEXACO, INC., THE TEXAS COMPANY, STANDARD OIL COMPANY OF CALIFORNIA and GETTY OIL COMPANY);
CLA-VAL CO., a division of GRISWOLD INDUSTRIES;
CONOCOPHILLIPS COMPANY individually and as successor in interest and successor by merger to CONOCO, INC., PHILLIPS PETROLEUM COMPANY, TOSCO CORPORATION and TOSCO REFINING COMPANY, INC.;
CRANE CO. individually and successor-in-interest to CHAPMAN VALVE CO., COCKRANE, INC. and CRANE SUPPLY COMPANY;
CROSBY VALVE, LLC, individually and successor-in-interest to CROSBY VALVE INC., CROSBY VALVE CORPORATION and CROSBY VALVE AND GAGE CORPORATION;
DILLINGHAM CONSTRUCTION, N.A., INC.;
DILLINGHAM CONSTRUCTION CORPORATION;
ELLIOTT COMPANY aka ELLIOTT TURBOMACHINERY CO., INC.;
FLOWSERVE US INC., individually and as successor in interest to EDWARD VALVE, INC.;
FLUOR CONSTRUCTORS INTERNATIONAL, INC.;

Page __2__ of __4__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hukkanen v. AIR & LIQUID SYSTEMS CORPORATION, et al. | |

INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[  ] Plaintiff    [✓] Defendant    [  ] Cross-Complainant    [  ] Cross-Defendant

FLUOR CORPORATION (sued individually and as successor-in-interest to FLUOR ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR OIL AND GAS CORPORATION; FLUOR INTERNATIONAL, INC.; FLUOR MIDEAST LIMITED; FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD; FLUOR-DANIEL ENGINEERS & CONSTRUCTION, LTD.; ESPANA OIL, INC.; FLUOR ABADAN, INC.; MIDDLE EAST FLUOR; FLUOR DANIEL CONSTRUCTION COMPANY; FLUOR IRAN; FLUOR MIDDLE EAST, LLC; FLUOR ABADAN, LIMITED);
FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD (sued individually and as successor-in-interest to FLUOR-DANIEL ENGINEERS & CONSTRUCTORS, LTD.; ESPANA OIL, INC.; FLUOR ABADAN LIMITED);
FLUOR ENTERPRISES, INC., (f/k/a FLUOR ENGINEERS AND CONSTRUCTORS, INC. sued individually and as successor-in-interest to FLUOR ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR MIDEAST LIMITED, FLUOR ABADAN, LIMITED, FLUOR DANIEL ENGINEERS & CONSTRUCTORS, INC., MIDDLE EAST FLUOR, FLUOR ENGINEERS, INC., FLUOR DANIEL, INC.);
FLUOR INTERNATIONAL, INC.;
FOSTER WHEELER, LLC, as successor in interest to FOSTER WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION;
GARDNER DENVER, INC. f/k/a GARDNER DENVER MACHINERY, INC.;
GENERAL ELECTRIC COMPANY;
GOULDS PUMPS, INC. also known as GOULDS PUMPS LLC;
HONEYWELL INTERNATIONAL INC., f/k/a and individually and as successor in interest to ALLIED SIGNAL, INC., individually and as successor in interest to BENDIX CORPORATION;
IMO INDUSTRIES, INC., sued individually and as successor-in-interest to DELAVAL STEAM TURBINE COMPANY and DELAVAL, INC.;
INGERSOLL-RAND COMPANY, individually and as successor in interest to TERRY STEAM TURBINE COMPANY;
ITT CORPORATION, individually and as successor in interest to FOSTER ENGINEERING COMPANY and BELL & GOSSETT COMPANY;
J.T. THORPE & SON, INC.;
METALCLAD INSULATION LLC f/k/a METALCLAD INSULATION CORPORATION;
PARSONS CORPORATION individually and as successor in interest to PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP INC. and THE RALPH M. PARSONS COMPANY;
PARSONS GOVERNMENT SERVICES INC. individually and as successor in interest to PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP INC. and THE RALPH M. PARSONS COMPANY;

Page __3__ of __4__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hukkanen v. AIR & LIQUID SYSTEMS CORPORATION, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
   Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

PETROCHEM INSULATION, INC.;
PIEROSE MAINTENANCE CORPORATION;
PLANT MAINTENANCE, INC.;
PLANT PRODUCTS & SUPPLY CO.;
SANTA FE BRAUN, INC., individually and as successor in interest to C.F. BRAUN & CO. and C.F.
BRAUN, INC.;
SEQUOIA VENTURES INC., formerly known as BECHTEL CORPORATION;
SWINERTON BUILDERS individually and as successor in interest to SWINERTON & WALBERG;
SWINERTON, INC.;
TEMPORARY PLANT CLEANERS, INC. individually and as successor in interest to PLANT
MAINTENANCE INC. OF CALIFORNIA;
TIMEC COMPANY, INC. individually and as successor in interest to THE INDUSTRIAL
MAINTENANCE ENGINEERING CONTRACTING COMPANY;
WARREN PUMPS, LLC, f/k/a WARREN PUMPS, INC., individually and as successor in interest to
QUIMBY PUMP COMPANY;

and DOES 1 through 400, inclusive,

Page __4__ of __4__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Benno Ashrafi, Esq. (CSBN 247623)
2  Venus Burns, Esq. (CSBN 265425)
   WEITZ & LUXENBERG, P.C.
3  1880 Century Park East, Suite 700
   Los Angeles, California 90067
4  Tel.: (310) 247-0921
5  Fax: (310) 786-9927

6  Attorneys for Plaintiffs

7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**FEB 22 2017**

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                 FOR THE COUNTY OF LOS ANGELES
10

| | |
|---|---|
| 11  JOHN HUKKANEN, an individual; MARY HUKKANEN, an individual; | CASE NO.   BC 651465 |
| 13            Plaintiffs, | |
| 14        v. | **PLAINTIFFS' COMPLAINT FOR DAMAGES** |
| 15  AIR & LIQUID SYSTEMS CORPORATION, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC., individually and successor in interest to BUFFALO FORGE; ALBAY CONSTRUCTION CO.; ALLIED FLUID PRODUCTS CORP. individually and as successor in interest to ALLIED PACKING & SUPPLY, INC.; ALLIED PACKING & SUPPLY, INC.; ATLANTIC RICHFIELD COMPANY; AURORA PUMP COMPANY; BLACKMER PUMP COMPANY; BORGWARNER MORSE TEC LLC as successor by merger to BORG-WARNER CORPORATION; BROADSPECTRUM DOWNSTREAM SERVICES, INC. individually and as successor in interest to TIMEC | 1.  NEGLIGENCE  2.  BREACH OF EXPRESS AND IMPLIED WARRANTIES  3.  STRICT LIABILITY  4.  PREMISES OWNER/ CONTRACTOR LIABILITY  5.  LOSS OF CONSORTIUM   DEMAND FOR JURY TRIAL |

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICE
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 1 -

PLAINTIFFS' COMPLAINT

COMPANY, INC. and THE
INDUSTRIAL MAINTENANCE
ENGINEERING CONTRACTING
COMPANY;

**BW/IP, INC.**, individually and as
successor in interest to BYRON JACSON
PUMP CO.;

**CBS CORPORATION**, f/k/a VIACOM,
INC., successor by merger to CBS
CORPORATION f/k/a WESTINGHOUSE
ELECTRIC CORPORATION as successor
in interest to BF STURTEVANT;

**CHEVRON U.S.A. INC.** (sued
individually and as successor-in-interest to
GULF OIL CORPORATION, TEXACO,
INC., THE TEXAS COMPANY,
STANDARD OIL COMPANY OF
CALIFORNIA and GETTY OIL
COMPANY);

**CLA-VAL CO.**, a division of GRISWOLD
INDUSTRIES;

**CONOCOPHILLIPS COMPANY**
individually and as successor in interest
and successor by merger to CONOCO,
INC., PHILLIPS PETROLEUM
COMPANY, TOSCO CORPORATION
and TOSCO REFINING COMPANY,
INC.;

**CRANE CO.** individually and successor-
in-interest to CHAPMAN VALVE CO.,
COCKRANE, INC. and CRANE SUPPLY
COMPANY;

**CROSBY VALVE, LLC**, individually and
successor-in-interest to CROSBY VALVE
INC., CROSBY VALVE CORPORATION
and CROSBY VALVE AND GAGE
CORPORATION;

**DILLINGHAM CONSTRUCTION,
N.A., INC.**;

**DILLINGHAM CONSTRUCTION
CORPORATION**;

**ELLIOTT COMPANY** aka ELLIOTT
TURBOMACHINERY CO., INC.;

**FLOWSERVE US INC.**, individually and
as successor in interest to EDWARD

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICE
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 2 -

VALVE, INC.;
**FLUOR CONSTRUCTORS INTERNATIONAL, INC.;**
**FLUOR CORPORATION** (sued individually and as successor-in-interest to FLUOR ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR OIL AND GAS CORPORATION; FLUOR INTERNATIONAL, INC.; FLUOR MIDEAST LIMITED; FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD; FLUOR-DANIEL ENGINEERS & CONSTRUCTION, LTD.; ESPANA OIL, INC.; FLUOR ABADAN, INC.; MIDDLE EAST FLUOR; FLUOR DANIEL CONSTRUCTION COMPANY; FLUOR IRAN; FLUOR MIDDLE EAST, LLC; FLUOR ABADAN, LIMITED);
**FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD** (sued individually and as successor-in-interest to FLUOR-DANIEL ENGINEERS & CONSTRUCTORS, LTD.; ESPANA OIL, INC.; FLUOR ABADAN LIMITED);
**FLUOR ENTERPRISES, INC.,** (f/k/a FLUOR ENGINEERS AND CONSTRUCTORS, INC. sued individually and as successor-in-interest to FLUOR ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR MIDEAST LIMITED, FLUOR ABADAN, LIMITED, FLUOR DANIEL ENGINEERS & CONSTRUCTORS, INC., MIDDLE EAST FLUOR, FLUOR ENGINEERS, INC., FLUOR DANIEL, INC.);
**FLUOR INTERNATIONAL, INC.;**
**FOSTER WHEELER, LLC,** as successor in interest to FOSTER WHEELER

- 3 -

PLAINTIFFS' COMPLAINT

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1  CORPORATION and FOSTER
   WHEELER ENERGY CORPORATION;
2  **GARDNER DENVER, INC.** f/k/a
   GARDNER DENVER MACHINERY,
3  INC.;
   **GENERAL ELECTRIC COMPANY;**
4  **GOULDS PUMPS, INC.** also known as
5  GOULDS PUMPS LLC;
   **HONEYWELL INTERNATIONAL**
6  **INC.**, f/k/a and individually and as
7  successor in interest to ALLIED SIGNAL,
   INC., individually and as successor in
8  interest to BENDIX CORPORATION;
   **IMO INDUSTRIES, INC.**, sued
9  individually and as successor-in-interest to
10 DELAVAL STEAM TURBINE
   COMPANY and DELAVAL, INC.;
11 **INGERSOLL-RAND COMPANY,**
12 individually and as successor in interest to
   TERRY STEAM TURBINE COMPANY;
13 **ITT CORPORATION**, individually and
   as successor in interest to FOSTER
14 ENGINEERING COMPANY and BELL &
15 GOSSETT COMPANY;
   **J.T. THORPE & SON, INC.;**
16 **METALCLAD INSULATION LLC** f/k/a
   METALCLAD INSULATION
17 CORPORATION;
18 **PARSONS CORPORATION**
   individually and as successor in interest to
19 PARSONS INFRASTRUCTURE &
20 TECHNOLOGY GROUP INC. and THE
   RALPH M. PARSONS COMPANY;
21 **PARSONS GOVERNMENT SERVICES**
22 **INC.** individually and as successor in
   interest to PARSONS
23 INFRASTRUCTURE & TECHNOLOGY
   GROUP INC. and THE RALPH M.
24 PARSONS COMPANY;
25 **PETROCHEM INSULATION, INC.;**
   **PIEROSE MAINTENANCE**
26 **CORPORATION;**
   **PLANT MAINTENANCE, INC.;**
27 **PLANT PRODUCTS & SUPPLY CO.;**
28 **SANTA FE BRAUN, INC.**, individually

- 4 -

1   and as successor in interest to C.F. BRAUN
    & CO. and C.F. BRAUN, INC.;
2   **SEQUOIA VENTURES INC.**, formerly
    known as BECHTEL CORPORATION;
3   **SWINERTON BUILDERS** individually
    and as successor in interest to
4   SWINERTON & WALBERG;
5   **SWINERTON, INC.**;
    **TEMPORARY PLANT CLEANERS,**
6   **INC.** individually and as successor in
    interest to PLANT MAINTENANCE INC.
7   OF CALIFORNIA;
8   **TIMEC COMPANY, INC.** individually
    and as successor in interest to THE
9   INDUSTRIAL MAINTENANCE
    ENGINEERING CONTRACTING
10  COMPANY;
11  **WARREN PUMPS, LLC**, f/k/a
    WARREN PUMPS, INC., individually and
12  as successor in interest to QUIMBY PUMP
    COMPANY;
13
14
15  and DOES 1 through 400, inclusive,
16                          Defendants.

17

18      **COMES NOW**, Plaintiffs JOHN HUKKANEN and MARY HUKKANEN for causes

19  of action against defendants and DOES 1 through 400, and each of them, inclusive, who files

20  this Complaint and alleges as follows:

21                          <u>GENERAL ALLEGATIONS</u>

22      1.   The true names and/or capacities, whether individual, corporate, partnership,

23  associate, governmental, or otherwise, of defendant DOES 1 through 400, inclusive, are

24  unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious

25  names.   Plaintiffs are informed and believe, and thereon allege, that each defendant

26  designated herein as a DOE caused injuries and damages proximately thereby to plaintiffs as

27  hereinafter alleged; and that each DOE defendant is liable to the plaintiffs for the acts and

28

PLAINTIFFS' COMPLAINT

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

omissions alleged herein below, and the resulting injuries to plaintiff, and damages sustained by the plaintiffs. Plaintiffs will amend this complaint to allege the true names and capacities of said DOE defendants when that same is ascertained.

2.      Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the defendants and each of the DOE defendants were the agent, servant, employee and/or joint venturer of the other co-defendants and other DOE defendants, and each of them, and at all said times, each defendant and each DOE defendant was acting in the full course, scope and authority of said agency, service, employment and/or joint venture.

3.      Plaintiffs are informed and believe, and thereon allege, that all times mentioned herein, defendants and DOES 1 through 400, and each of them, inclusive, were also known as, formerly known as and/or were the successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, a parent, a subsidiary (wholly or partially owned by, or the whole or partial owner), affiliate, partner, co-venturer, merged company, alter egos, agents, equitable trustees and/or fiduciaries of and/or were members in an entity or entities engaged in the funding, researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, repairing, installing, demolishing, contracting for installation, contracting others to install, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and/or other products, components and assemblies containing said substance (hereafter "alternate entities"). Defendants and DOES 1 through 400, and each of them, inclusive, are liable for the acts, omissions and tortious conduct of its successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, parent, subsidiary, affiliate, partner, co-venturer, merged company, alter ego, agent, equitable trustee, fiduciary and/or its alternate entities in that defendants and DOES 1 through 400, and each of them, inclusive, enjoys the goodwill originally attached to each such alternate entity, acquired the assets or product line (or portion thereof), and that there has been a virtual

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 6 -

1   destruction of plaintiff's remedy against each such alternate entity, and in that each such
2   defendant has the ability to assume the risk spreading role of each such alternate entity.

3       4.     Defendants placed their names, logos, and trademarks on asbestos products as
4   well as put out as their own asbestos products manufactured by others so as to be an apparent
5   manufacturer and liable as the manufacturer.

6       5.     Although the plaintiff may have been employed by defendant at the time of his
7   exposure to the defendant's asbestos-containing products (and to other asbestos-containing
8   products), or to asbestos by virtue of defendant's failure to protect from asbestos, each
9   defendant lacked workers' compensation insurance coverage during the years that the
10  plaintiff was exposed, having failed to secure the payment of workers' compensation through
11  mandated insurance or self-insurance coverage.  In addition, the plaintiff's exposure to the
12  defendant's asbestos-containing products (and to other asbestos-containing products), or to
13  asbestos by virtue of defendant's failure to protect from asbestos, did not arise out of the
14  plaintiff's employment, as the defendant lacked the right to control the manner or means of
15  the plaintiff's work duties.  Finally, the plaintiff was exposed to asbestos-containing products
16  that the defendant manufactured for sale to the general public, and which the plaintiff only
17  incidentally used during the course of his work duties.

18      6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein
19  mentioned, that defendants and DOES 1 through 400, and each of them, inclusive, were and
20  are corporations organized and existing under the laws of the State of California or the laws
21  of some state or foreign jurisdiction; that each of the said defendants and DOE defendants
22  were and are authorized to do and are doing business in the State of California and regularly
23  conducted business in the County of Los Angeles; and that certain defendants and DOES
24  designate or have maintained principle places of business in the County of Los Angeles.

25      7.     Plaintiff JOHN HUKKANEN was exposed while performing duties as
26  machinist in the US Navy from approximately 1960 through 1968 aboard the USS Somers
27  and USS Watke, as well as exposed while working at the Richfield, Gulf Oil, and
28  Tosco/Phillips refineries from approximately 1968-1979, as well as while performing

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 7 -

1   automotive work, who at various locations, including within the State of California, used,

2   handled or was otherwise exposed to asbestos, asbestos containing products and/or products

3   designed to be used in association with asbestos products of, and/or products that created an

4   asbestos hazard, and/or safety equipment intended to block the entry of asbestos fibers,

5   and/or by virtue of the creation of asbestos dust and failure to protect from asbestos dust,

6   and/or on or about the premises of and by, defendants and DOES 1 through 400, and each of

7   them, inclusive; including: **AIR & LIQUID SYSTEMS CORPORATION**, a subsidiary of

8   AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to

9   BUFFALO PUMPS, INC., individually and successor in interest to BUFFALO FORGE (for

10   pumps, gaskets, packing, insulation and negligently creating asbestos dust); **ALBAY**

11   **CONSTRUCTION CO.** (for gaskets, packing, insulation and negligently creating asbestos

12   dust); **ALLIED FLUID PRODUCTS CORP.** individually and as successor in interest to

13   ALLIED PACKING & SUPPLY, INC. (for gaskets, packing, insulation, asbestos products,

14   negligently creating asbestos dust and failing to protect from asbestos dust); **ALLIED**

15   **PACKING & SUPPLY, INC.** (for gaskets, packing, insulation, asbestos products,

16   negligently creating asbestos dust and failing to protect from asbestos dust); **ATLANTIC**

17   **RICHFIELD COMPANY** (for gaskets, packing, insulation, asbestos products, negligently

18   creating asbestos dust and failing to protect from asbestos dust); AURORA PUMP

19   **COMPANY** (for pumps, gaskets, packing, insulation and negligently creating asbestos

20   dust); **BLACKMER PUMP COMPANY** (for pumps, gaskets, packing, insulation and

21   negligently creating asbestos dust); **BORGWARNER MORSE TEC LLC** as successor by

22   merger to BORG-WARNER CORPORATION (for clutches); **BROADSPECTRUM**

23   **DOWNSTREAM SERVICES, INC.** individually and as successor in interest to TIMEC

24   COMPANY, INC. and THE INDUSTRIAL MAINTENANCE ENGINEERING

25   CONTRACTING COMPANY (for gaskets, packing, insulation, asbestos products,

26   negligently creating asbestos dust and failing to protect from asbestos dust); **BW/IP, INC.**,

27   individually and as successor in interest to BYRON JACSON PUMP CO. (for pumps,

28   gaskets, packing, insulation and negligently creating asbestos dust); **CBS CORPORATION**,

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 8 -

PLAINTIFFS' COMPLAINT

f/k/a VIACOM, INC., successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in interest to BF STURTEVANT (for pumps, turbines, insulation, gaskets, packing, electrical equipment and negligently creating asbestos dust); **CHEVRON U.S.A. INC.** (sued individually and as successor-in-interest to GULF OIL CORPORATION, TEXACO, INC., THE TEXAS COMPANY, STANDARD OIL COMPANY OF CALIFORNIA and GETTY OIL COMPANY) (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **CLA-VAL CO.**, a division of GRISWOLD INDUSTRIES (valves, gaskets, packing and insulation); **CONOCOPHILLIPS COMPANY** individually and as successor in interest and successor by merger to CONOCO, INC., PHILLIPS PETROLEUM COMPANY, TOSCO CORPORATION and TOSCO REFINING COMPANY, INC. (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **CRANE CO.** individually and successor-in-interest to CHAPMAN VALVE CO., COCKRANE, INC. and CRANE SUPPLY COMPANY (for gaskets, packing, insulation and pipe); **CROSBY VALVE, LLC,** individually and successor-in-interest to CROSBY VALVE INC., CROSBY VALVE CORPORATION and CROSBY VALVE AND GAGE CORPORATION (for valves, gaskets, packing and insulation); **DILLINGHAM CONSTRUCTION, N.A., INC.** (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **DILLINGHAM CONSTRUCTION CORPORATION** (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **ELLIOTT COMPANY** aka ELLIOTT TURBOMACHINERY CO., INC. (for gaskets, packing, insulation and negligently creating asbestos dust); **FLOWSERVE US INC.**, individually and as successor in interest to EDWARD VALVE, INC. (for valves, gaskets, packing and insulation); **FLUOR CONSTRUCTORS INTERNATIONAL, INC.** (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR CORPORATION** (sued individually and as successor-in-interest to FLUOR

- 9 -

ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.;  FLUOR OIL AND GAS CORPORATION; FLUOR INTERNATIONAL, INC.; FLUOR MIDEAST LIMITED; FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD; FLUOR-DANIEL ENGINEERS & CONSTRUCTION, LTD.; ESPANA OIL, INC.; FLUOR ABADAN, INC.; MIDDLE EAST FLUOR; FLUOR DANIEL CONSTRUCTION COMPANY; FLUOR IRAN; FLUOR MIDDLE EAST, LLC; FLUOR ABADAN, LIMITED) (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD** (sued individually and as successor-in-interest to FLUOR-DANIEL ENGINEERS & CONSTRUCTORS, LTD.; ESPANA OIL, INC.; FLUOR ABADAN LIMITED) (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR ENTERPRISES, INC.**, (f/k/a FLUOR ENGINEERS AND CONSTRUCTORS, INC. sued individually and as successor-in-interest to FLUOR ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR MIDEAST LIMITED, FLUOR ABADAN, LIMITED, FLUOR DANIEL ENGINEERS & CONSTRUCTORS, INC., MIDDLE EAST FLUOR, FLUOR ENGINEERS, INC., FLUOR DANIEL, INC.) (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR INTERNATIONAL, INC.** (for gaskets, packing, insulation and negligently creating asbestos dust); **FOSTER WHEELER, LLC**, as successor in interest to FOSTER WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION (for gaskets, packing, insulation and negligently creating asbestos dust); **GARDNER DENVER, INC.** f/k/a GARDNER DENVER MACHINERY, INC. (for pumps, gaskets and packing); **GENERAL ELECTRIC COMPANY** (for pumps, turbines, insulation, gaskets, packing, electrical equipment and negligently creating asbestos dust); **GOULDS PUMPS, INC.** also known as GOULDS PUMPS LLC (for pumps, gaskets, packing, insulation and negligently creating asbestos dust); **HONEYWELL INTERNATIONAL INC.**, f/k/a and individually and as successor in interest to ALLIED SIGNAL, INC., individually and as successor in

PLAINTIFFS' COMPLAINT

WEITZ & LUXENBERG P.C.<br>A PROFESSIONAL CORPORATION<br>LAW OFFICES<br>1880 CENTURY PARK EAST, SUITE 700<br>LOS ANGELES, CALIFORNIA 90067

1  interest to BENDIX CORPORATION (for automotive products); **IMO INDUSTRIES,**

2  **INC.**, sued individually and as successor-in-interest to DELAVAL STEAM TURBINE

3  COMPANY and DELAVAL, INC. (for pumps, turbines, insulation, gaskets, packing and

4  negligently creating asbestos dust); **INGERSOLL-RAND COMPANY**, individually and as

5  successor in interest to TERRY STEAM TURBINE COMPANY (for pumps and

6  compressors); **ITT CORPORATION**, individually and as successor in interest to FOSTER

7  ENGINEERING COMPANY and BELL & GOSSETT COMPANY (for pumps, valves,

8  gaskets, packing, insulation and negligently creating asbestos dust); **J.T. THORPE & SON,**

9  **INC.** (for gaskets, packing, insulation and negligently creating asbestos dust);

10  **METALCLAD   INSULATION   LLC**   f/k/a   METALCLAD   INSULATION

11  CORPORATION (for gaskets, packing, insulation and negligently creating asbestos dust);

12  **PARSONS CORPORATION**, individually and as successor in interest to PARSONS

13  INFRASTRUCTURE & TECHNOLOGY GROUP INC. and THE RALPH M. PARSONS

14  COMPANY (for gaskets, packing, insulation and negligently creating asbestos dust);

15  **PARSONS GOVERNMENT SERVICES INC.** individually and as successor in interest to

16  PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP INC. and THE RALPH M.

17  PARSONS COMPANY (for gaskets, packing, insulation and negligently creating asbestos

18  dust); **PETROCHEM INSULATION, INC.** (for gaskets, packing, insulation, asbestos

19  products, negligently creating asbestos dust and failing to protect from asbestos dust);

20  **PIEROSE MAINTENANCE CORPORATION** (for gaskets, packing, insulation and

21  negligently creating asbestos dust); **PLANT MAINTENANCE, INC.** (for gaskets, packing,

22  insulation and negligently creating asbestos dust); **PLANT PRODUCTS & SUPPLY CO.**

23  (for gaskets, packing, insulation and negligently creating asbestos dust); **SANTA FE**

24  **BRAUN, INC.**, individually and as successor in interest to C.F. BRAUN & CO. and C.F.

25  BRAUN, INC. (for gaskets, packing, insulation and negligently creating asbestos dust);

26  **SEQUOIA VENTURES INC.**, formerly known as BECHTEL CORPORATION (for

27  gaskets, packing, insulation and negligently creating asbestos dust); **SWINERTON**

28  **BUILDERS** individually and as successor in interest to SWINERTON & WALBERG (for

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 11 -

gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **SWINERTON, INC.** (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **TEMPORARY PLANT CLEANERS, INC.** individually and as successor in interest to PLANT MAINTENANCE INC. OF CALIFORNIA (for gaskets, packing, insulation and negligently creating asbestos dust); **TIMEC COMPANY, INC.** individually and as successor in interest to THE INDUSTRIAL MAINTENANCE ENGINEERING CONTRACTING COMPANY (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **WARREN PUMPS, LLC,** f/k/a WARREN PUMPS, INC., individually and as successor in interest to QUIMBY PUMP COMPANY (for pumps, gaskets, packing, insulation and negligently creating asbestos dust). Plaintiffs further allege; Defendants, and DOES 1 through 400, and each of them inclusive, designed, manufactured, sold, supplied, distributed and otherwise marketed asbestos containing products, equipment and systems with original and replacement asbestos-containing products, components, and integral parts; that defendants and DOES 1 through 400 inclusive specified and required the use of such original and replacement asbestos containing parts and components that were integral to their respective asbestos containing products' normal use and operation and that by design such normal use and operation directly created, generated, released and exposed plaintiff JOHN HUKKANEN to asbestos-containing dust, debris, fiber and particulate from such integral, specified, necessary and required asbestos products and components; that as a direct and proximate result of all of the above, plaintiff JOHN HUKKANEN was exposed by Defendants and DOES 1 through 400, inclusive to asbestos-containing dust, debris, fiber and particulate which increased his risk of developing the mesothelioma and asbestos disease(s) from which he now suffers.

8.    Plaintiffs hereby waive any claims against Defendants **CBS CORPORATION,** f/k/a VIACOM, INC., successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in interest to BF

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

STURTEVANT, **CRANE CO.** individually and successor-in-interest to CHAPMAN VALVE CO., COCKRANE, INC. and CRANE SUPPLY COMPANY, **FOSTER WHEELER, LLC,** as successor in interest to FOSTER WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION and **METALCLAD INSULATION LLC** f/k/a METALCLAD INSULATION CORPORATION, relating to or arising out of Plaintiffs' asbestos exposure at military and federal government jobsites or from U.S. military vessels or equipment or at the direction of a federal officer or agent of a federal officer.

9.    Plaintiffs are informed and believe, and thereon allege, that asbestos related diseases such mesothelioma, lung cancer, asbestosis, scarring of the lungs and pleural plaques are progressive lung diseases caused by cumulative inhalation of asbestos fibers without perceptible trauma and that said diseases result from exposure to asbestos and asbestos products over a period of time.

10.    As set forth herein this complaint, and as a result of plaintiff JOHN HUKKANEN's asbestos exposure to the products of and/or on the premises of defendants and DOES 1 through 400, and each of them, inclusive, plaintiff JOHN HUKKANEN was diagnosed with mesothelioma on or about December, 2016, which is life threatening, debilitating and likely terminal, and plaintiff continues to endure great physical pain and suffering, mental anguish, loss of enjoyment of life and the loss of earnings, earning capacity and attendant medical expenses; all to the plaintiffs' general and special damage in excess of the jurisdictional limits of the unlimited Court.

<u>FIRST CAUSE OF ACTION</u>

NEGLIGENCE

**(Against All Product Defendants and DOES 1 through 400)**

11.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of paragraphs 1 through 10 above, inclusive.

12.    Plaintiff JOHN HUKKANEN was a worker and end user who used, handled or was otherwise exposed to asbestos, asbestos containing products and/or products designed to

1  be used in association with asbestos products of, and/or products that created an asbestos

2  hazard, and/or safety equipment intended to block the entry of asbestos fibers, and/or by

3  virtue of the creation of asbestos dust and failure to protect from asbestos dust, and/or on or

4  about the premises of and by, including, but not limited to:  **AIR & LIQUID SYSTEMS**

5  **CORPORATION,** a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually

6  and as successor by merger to BUFFALO PUMPS, INC., individually and successor in

7  interest to BUFFALO FORGE (for pumps, gaskets, packing, insulation and negligently

8  creating asbestos dust); **ALBAY CONSTRUCTION CO.** (for gaskets, packing, insulation

9  and negligently creating asbestos dust); **ALLIED FLUID PRODUCTS CORP.**

10  individually and as successor in interest to ALLIED PACKING & SUPPLY, INC. (for

11  gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing

12  to protect from asbestos dust); **ALLIED PACKING & SUPPLY, INC.** (for gaskets,

13  packing, insulation, asbestos products, negligently creating asbestos dust and failing to

14  protect from asbestos dust); **ATLANTIC RICHFIELD COMPANY** (for gaskets, packing,

15  insulation, asbestos products, negligently creating asbestos dust and failing to protect from

16  asbestos dust); **AURORA PUMP COMPANY** (for pumps, gaskets, packing, insulation and

17  negligently creating asbestos dust); **BLACKMER PUMP COMPANY** (for pumps, gaskets,

18  packing, insulation and negligently creating asbestos dust); **BORGWARNER MORSE**

19  **TEC LLC** as successor by merger to BORG-WARNER CORPORATION (for clutches);

20  **BROADSPECTRUM DOWNSTREAM SERVICES, INC.** individually and as successor

21  in interest to TIMEC COMPANY, INC. and THE INDUSTRIAL MAINTENANCE

22  ENGINEERING CONTRACTING COMPANY (for gaskets, packing, insulation, asbestos

23  products, negligently creating asbestos dust and failing to protect from asbestos dust);

24  **BW/IP, INC.,** individually and as successor in interest to BYRON JACSON PUMP CO. (for

25  pumps, gaskets, packing, insulation and negligently creating asbestos dust); **CBS**

26  **CORPORATION,** f/k/a VIACOM, INC., successor by merger to CBS CORPORATION

27  f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in interest to BF

28  STURTEVANT (for pumps, turbines, insulation, gaskets, packing, electrical equipment and

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 14 -

1  negligently creating asbestos dust); **CHEVRON U.S.A. INC.** (sued individually and as
2  successor-in-interest to GULF OIL CORPORATION, TEXACO, INC., THE TEXAS
3  COMPANY, STANDARD OIL COMPANY OF CALIFORNIA and GETTY OIL
4  COMPANY) (for gaskets, packing, insulation, asbestos products, negligently creating
5  asbestos dust and failing to protect from asbestos dust); **CLA-VAL CO.**, a division of
6  GRISWOLD    INDUSTRIES    (valves,    gaskets,    packing    and    insulation);
7  **CONOCOPHILLIPS COMPANY** individually and as successor in interest and successor
8  by merger to CONOCO, INC., PHILLIPS PETROLEUM COMPANY, TOSCO
9  CORPORATION and TOSCO REFINING COMPANY, INC. (for gaskets, packing,
10  insulation, asbestos products, negligently creating asbestos dust and failing to protect from
11  asbestos dust); **CRANE CO.** individually and successor-in-interest to CHAPMAN VALVE
12  CO., COCKRANE, INC. and CRANE SUPPLY COMPANY (for gaskets, packing,
13  insulation and pipe); **CROSBY VALVE, LLC,** individually and successor-in-interest to
14  CROSBY VALVE INC., CROSBY VALVE CORPORATION and CROSBY VALVE AND
15  GAGE CORPORATION (for valves, gaskets, packing and insulation); **DILLINGHAM**
16  **CONSTRUCTION, N.A., INC.** (for gaskets, packing, insulation, asbestos products,
17  negligently creating asbestos dust and failing to protect from asbestos dust);
18  **DILLINGHAM CONSTRUCTION CORPORATION** (for gaskets, packing, insulation,
19  asbestos products, negligently creating asbestos dust and failing to protect from asbestos
20  dust); **ELLIOTT COMPANY** aka ELLIOTT TURBOMACHINERY CO., INC. (for
21  gaskets, packing, insulation and negligently creating asbestos dust); **FLOWSERVE US**
22  **INC.**, individually and as successor in interest to EDWARD VALVE, INC. (for valves,
23  gaskets, packing and insulation); **FLUOR CONSTRUCTORS INTERNATIONAL, INC.**
24  (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR**
25  **CORPORATION** (sued individually and as successor-in-interest to FLUOR
26  ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND
27  CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR OIL
28  AND GAS CORPORATION; FLUOR INTERNATIONAL, INC.; FLUOR MIDEAST

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 15 -

LIMITED; FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD; FLUOR-DANIEL ENGINEERS & CONSTRUCTION, LTD.; ESPANA OIL, INC.; FLUOR ABADAN, INC.; MIDDLE EAST FLUOR; FLUOR DANIEL CONSTRUCTION COMPANY; FLUOR IRAN; FLUOR MIDDLE EAST, LLC; FLUOR ABADAN, LIMITED) (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR DANIEL ENGINEERS & CONSTRUCTORS, LTD** (sued individually and as successor-in-interest to FLUOR-DANIEL ENGINEERS & CONSTRUCTORS, LTD.; ESPANA OIL, INC.; FLUOR ABADAN LIMITED) (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR ENTERPRISES, INC.**, (f/k/a FLUOR ENGINEERS AND CONSTRUCTORS, INC. sued individually and as successor-in-interest to FLUOR ENGINEERING & CONSTRUCTION COMPANY LTD.; FLUOR ENGINEERING AND CONSTRUCTION GROUP, INC.; THE FLUOR CORPORATION, LTD.; FLUOR MIDEAST LIMITED, FLUOR ABADAN, LIMITED, FLUOR DANIEL ENGINEERS & CONSTRUCTORS, INC., MIDDLE EAST FLUOR, FLUOR ENGINEERS, INC., FLUOR DANIEL, INC.) (for gaskets, packing, insulation and negligently creating asbestos dust); **FLUOR INTERNATIONAL, INC.** (for gaskets, packing, insulation and negligently creating asbestos dust); **FOSTER WHEELER, LLC**, as successor in interest to FOSTER WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION (for gaskets, packing, insulation and negligently creating asbestos dust); **GARDNER DENVER, INC.** f/k/a GARDNER DENVER MACHINERY, INC. (for pumps, gaskets and packing); **GENERAL ELECTRIC COMPANY** (for pumps, turbines, insulation, gaskets, packing, electrical equipment and negligently creating asbestos dust); **GOULDS PUMPS, INC.** also known as GOULDS PUMPS LLC (for pumps, gaskets, packing, insulation and negligently creating asbestos dust); **HONEYWELL INTERNATIONAL INC.**, f/k/a and individually and as successor in interest to ALLIED SIGNAL, INC., individually and as successor in interest to BENDIX CORPORATION (for automotive products); **IMO INDUSTRIES, INC.**, sued individually and as successor-in-interest to DELAVAL STEAM TURBINE COMPANY and DELAVAL, INC. (for pumps, turbines, insulation, gaskets, packing and

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST SUITE 700
LOS ANGELES, CALIFORNIA 90067

negligently creating asbestos dust); **INGERSOLL-RAND COMPANY**, individually and as successor in interest to TERRY STEAM TURBINE COMPANY (for pumps and compressors); **ITT CORPORATION**, individually and as successor in interest to FOSTER ENGINEERING COMPANY and BELL & GOSSETT COMPANY (for pumps, valves, gaskets, packing, insulation and negligently creating asbestos dust); **J.T. THORPE & SON, INC.** (for gaskets, packing, insulation and negligently creating asbestos dust); **METALCLAD INSULATION LLC** f/k/a METALCLAD INSULATION CORPORATION (for gaskets, packing, insulation and negligently creating asbestos dust); **PARSONS CORPORATION**, individually and as successor in interest to PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP INC. and THE RALPH M. PARSONS COMPANY (for gaskets, packing, insulation and negligently creating asbestos dust); **PARSONS GOVERNMENT SERVICES INC.** individually and as successor in interest to PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP INC. and THE RALPH M. PARSONS COMPANY (for gaskets, packing, insulation and negligently creating asbestos dust); **PETROCHEM INSULATION, INC.** (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **PIEROSE MAINTENANCE CORPORATION** (for gaskets, packing, insulation and negligently creating asbestos dust); **PLANT MAINTENANCE, INC.** (for gaskets, packing, insulation and negligently creating asbestos dust); **PLANT PRODUCTS & SUPPLY CO.** (for gaskets, packing, insulation and negligently creating asbestos dust); **SANTA FE BRAUN, INC.**, individually and as successor in interest to C.F. BRAUN & CO. and C.F. BRAUN, INC. (for gaskets, packing, insulation and negligently creating asbestos dust); **SEQUOIA VENTURES INC.**, formerly known as BECHTEL CORPORATION (for gaskets, packing, insulation and negligently creating asbestos dust); **SWINERTON BUILDERS** individually and as successor in interest to SWINERTON & WALBERG (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos dust); **SWINERTON, INC.** (for gaskets, packing, insulation, asbestos products, negligently creating asbestos dust and failing to protect from asbestos

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 17 -

1  dust); **TEMPORARY PLANT CLEANERS, INC.** individually and as successor in interest

2  to PLANT MAINTENANCE INC. OF CALIFORNIA (for gaskets, packing, insulation and

3  negligently creating asbestos dust); **TIMEC COMPANY, INC.** individually and as

4  successor in interest to THE INDUSTRIAL MAINTENANCE ENGINEERING

5  CONTRACTING COMPANY (for gaskets, packing, insulation, asbestos products,

6  negligently creating asbestos dust and failing to protect from asbestos dust); **WARREN**

7  **PUMPS, LLC,** f/k/a WARREN PUMPS, INC., individually and as successor in interest to

8  QUIMBY PUMP COMPANY (for pumps, gaskets, packing, insulation and negligently

9  creating asbestos dust), and DOES 1 through 400, and each of them inclusive (hereafter

10  "Product Defendants"), in a manner that was reasonably foreseeable to said defendants.

11      13.    At all times herein mentioned, the Product Defendants, and each of them, were

12  engaged in the business of researching, studying, manufacturing, fabricating, designing,

13  developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale,

14  selling, inspecting, servicing, repairing, installing, demolishing, contracting for installation,

15  contracting others to install, repairing, marketing, warranting, rebranding, manufacturing for

16  others, packaging and advertising a certain substance, the generic name of which is asbestos

17  and/or products containing asbestos and/or products which created an asbestos hazard, or are

18  engaged in the business of manufacturing, fabricating, designing, assembling, distributing,

19  selling, and marketing of safety equipment, including respiratory protective devices which

20  were intended to block the entry of asbestos fibers into the bodies of workers who were

21  exposed to asbestos in the workplace and other locations.

22      14.    At all times herein mentioned, the Product Defendants, and each of them,

23  negligently and carelessly researched, tested or failed to test, warned or failed to warn, failed

24  to recall or retrofit, failed to provide protective measures to prevent take home exposure,

25  failed to warn of the dangers to those who come in contact with users, manufactured and/or

26  caused to be manufactured, fabricated, designed, developed, labeled, assembled, distributed,

27  supplied, leased, bought, offered for sale, sold, inspected, serviced, repaired, installed,

28  demolished, contracted for installation, contracted others to install, repaired, marketed,

WEITZ & LUXENBERG, P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 18 -

warranted, rebranded, manufactured for others, packaged and advertised asbestos and/or products containing asbestos and/or products which created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos, and those products did, in fact, proximately cause personal injuries to users, consumers, workers, persons working around or living with persons working with or around such products, and others including plaintiff JOHN HUKKANEN, while being used in a manner that was intended by or otherwise reasonably foreseeable to said defendants, thereby rendering said products unsafe and dangerous for use by the consumers, users, bystanders or workers exposed thereto.

15.   At all times herein mentioned, the Product Defendants, and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and said Defendants breached said duty of reasonable care in that Product Defendants, and each of them, failed to safely and adequately design, manufacture and/or sell said defendants' products; failed to test said products; failed to investigate the hazards of said products; failed to recall or retrofit; failed to provide protective measures to prevent take home exposure; failed to warn those persons who would be exposed, failed to warn of the dangers to those who come in contact with users, including plaintiff JOHN HUKKANEN, of the health hazards of using said defendants' products; failed to disclose the known or knowable dangers of using said defendants' products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

16.   On or before 1932, and thereafter, the Product Defendants, and each of them, were aware and knew of the dangers associated with breathing asbestos containing dust, and said defendants also were aware and knew that users of asbestos and asbestos products, as well as members of the general public who would be exposed to asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos could cause injury, and said defendants knew that the users of asbestos and asbestos-containing products, as well as members of the general public who were exposed to asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous

- 19 -

to human life; and propagated misinformation intended to instill in users of the Product Defendants' products a false security about the safety of said defendants' products.

17.     The Product Defendants, and each of them, knew and failed to disclose that plaintiff JOHN HUKKANEN and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer, and said defendants knew and failed to disclose that inhalation of asbestos would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians such that physicians could not examine, diagnose and treat those who were exposed to asbestos, including plaintiff.

18.     The Product Defendants, and each of them, despite said defendants' knowledge of the substantial risks associated with exposure to asbestos, willfully and knowingly concealed and actively suppressed and promoted the suppression from all consumers, including plaintiff JOHN HUKKANEN, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom in conscious disregard of the rights, safety and welfare of users, consumers, workers, persons working around or living with persons working with or around such asbestos and asbestos-containing products, and others including plaintiff JOHN HUKKANEN.

19.     Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, the Product Defendants, and each of them, intentionally failed to reveal their knowledge of said risk, fraudulently, consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations. Said defendants propagated misinformation to instill a false sense of security and safety to instill in users a false sense of security about the safety of their products.

- 20 -

PLAINTIFFS' COMPLAINT

20.     In researching, testing, manufacturing, distributing, labeling, installing and marketing said products, the Product Defendants, and each of them, did so with conscious disregard for the safety of the users of said products, in that said defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including but not limited to mesothelioma.  Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which said defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said defendants, and which knowledge was obtained by said defendants on or before 1932, and thereafter.

21.     The above referenced conduct of Product Defendants, and each of them, was motivated by the financial interest of said defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos-containing products.  In pursuit of said financial motivation, said defendants consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos-containing products, and were in fact, consciously willing to permit asbestos and asbestos-containing products to cause injury to workers and users thereof, and persons exposed thereto, including plaintiff.

22.     With said knowledge, Product Defendants, and each of them, opted to manufacture, distribute and install said asbestos and asbestos-containing products without attempting to protect users from or warn users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products.

23.     Plaintiffs were not aware that exposure to asbestos presented any risk of injury and/or disease to JOHN HUKKANEN, and had not been advised or informed by anyone that he could contract any disease, sickness or injury as a result of working in the vicinity of asbestos.

24.     Product Defendants, and each of them, were aware that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust.

- 21 -

PLAINTIFFS' COMPLAINT

25.     Plaintiffs are informed and believe, and based thereon allege, that the injuries complained of herein were proximately caused by the negligence of the Product Defendants, and each of them, in that said defendants knew or should have known that the asbestos dust would be generated and released from their asbestos-containing products during the regular and intended uses of such asbestos products, and that said asbestos-containing products and the asbestos dust exposure there from created an increased risk of asbestos disease for all users, consumers, or others, including plaintiff, who breathed said asbestos-containing dust which said defendants knew or should have known was harmful to the body and health of persons installing, handling, and using asbestos and asbestos-containing products, as well as to persons in the immediate vicinity of such installation, use and handling, and that such asbestos products and dust were capable of causing and did, in fact, cause personal injuries to users, consumers and others, while being used in a manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by plaintiff.

26.     Plaintiffs are informed and believe, and based thereon allege, that the injuries complained of herein were proximately caused by the negligence of the Product Defendants, and each of them, in that said defendants failed to take reasonable care to warn the plaintiff of the danger and harm to which he was exposed while installing, handling and otherwise using said products, as well as while he was in the vicinity of the use, installation, and handling of said products, and failed to specify, recommend, supply, install, sell, and use readily available substitutes which do not and did not pose the danger to human health.

27.     The conduct of the Product Defendants, and each of them, as described in this cause of action was a substantial factor and a legal cause of the injuries and damages sustained by plaintiff, and that said defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of plaintiff JOHN HUKKANEN, and that such intentional acts and omissions were substantial factors in causing his disease and injuries.

28.     As a direct and proximate result of the aforesaid conduct of said Product Defendants, and each of them, plaintiff JOHN HUKKANEN has suffered, and continues to

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1   suffer, permanent injuries to his person, body and health all to his general damage in a sum

2   in excess of the jurisdictional limits of this unlimited Court.

3       29.   As a direct and proximate result of the aforesaid conduct of said Product

4   Defendants, and each of them, plaintiff JOHN HUKKANEN was and will be compelled to

5   and did employ medical services in an amount which has not as yet been fully ascertained

6   and which will be asserted according to proof at trial.

7       30.   As a direct and proximate result of the aforesaid conduct of said Product

8   Defendants, and each of them, plaintiffs have and/or will suffer loss of income and earnings,

9   past, present and future and earning capacity in an amount which has not as yet been fully

10  ascertained and which will be asserted according to proof at trial.

11      31.   As a direct and proximate result of the aforesaid conduct of said Product

12  Defendants, and each of them, plaintiffs did necessarily incur and in the future will incur

13  incidental expenses and damages in an amount which has not as yet been fully ascertained

14  and which will be asserted according to proof at trial.

15      32.   In particular, plaintiffs would show that, as alleged here in this cause of action

16  and throughout this complaint, that such intentional, grossly wanton acts and omissions by

17  said Product Defendants, and DOES 1 through 400, and each of them, and their officers,

18  directors, and managing agents, inclusive, were substantial factors in, and participated in,

19  authorized, expressly and impliedly ratified, and had full knowledge of or should have

20  known, each of the acts set forth here causing his disease and injuries.   As the above

21  referenced conduct complained of in this complaint of said Product Defendants, and DOES 1

22  through 400, and each of them, and their officers, directors, and managing agents, inclusive,

23  was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and said Product

24  Defendants, and each of them, inclusive, demonstrated such an entire want of care as to

25  establish that their acts and omissions were the result of actual conscious indifference to the

26  rights, safety, and welfare of plaintiff JOHN HUKKANEN and of workers exposed to

27  asbestos and asbestos products, such that, plaintiffs, for the sake of example, and by way of

28  punishing said defendants, seeks punitive damages according to proof.

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1   ////

2   ////

3                            SECOND CAUSE OF ACTION

4               BREACH OF EXPRESS AND IMPLIED WARRANTIES

5                 (Against All Product Defendants and DOES 1 through 400)

6          33.     Plaintiff re-alleges and incorporates here by reference, as though fully set forth

7   at length herein, all of the allegations of paragraphs 1 through 32 above, inclusive.

8          34.     Defendants and DOES 1 through 400, and each of them, inclusive, sold and/or

9   otherwise supplied the asbestos containing products, materials and equipment to Plaintiff

10  and/or his employers.

11         35.     That in connection with the manufacture, preparation, sale, specification,

12  installation, use, and supply of asbestos products, Product Defendants, and each of them,

13  expressly and impliedly warranted that said products were of good and merchantable quality

14  and fit for their intended use. However, in truth and in fact, said products contained harmful

15  and deleterious asbestos fibers, known to the defendants herein, to be defective and harmful

16  to humans exposed thereto.

17         36.     Said products were not and are not suitable for the purposes for which said

18  products were intended, supplied, and relied upon, nor suitable for any other similar purpose,

19  including their use by human beings in confined spaces where humans would be physically

20  present, working, resting or breathing.

21         37.     Plaintiffs relied on the express and implied warranties of Product Defendants,

22  and each of them, in the use of and exposure to said asbestos and asbestos products, and

23  plaintiff JOHN HUKKANEN was using and/or exposed to said asbestos in a reasonably

24  foreseeable intended manner.

25         38.     Product Defendants, and each of them, breached the above-described express

26  and implied warranties in that said substance was defective, which defects permitted and/or

27  caused said substance to seriously and permanently cause injury to plaintiff while using said

28  substance in a manner that was reasonably foreseeable.

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

- 24 -

PLAINTIFFS' COMPLAINT

39.   The breaches of warranties by the Product Defendants, and each of them, as described in this cause of action were a substantial factor and a legal cause of the injuries and damages sustained by plaintiff.

40.   As a direct and proximate result of the above-described breaches of warranties by said Product Defendants, and each of them, plaintiff JOHN HUKKANEN suffered severe and permanent injuries to his person, and plaintiff suffered damages as alleged above.

41.   In particular, plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said Product Defendants, and DOES 1 through 400, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known, each of the acts set forth here causing his disease and injuries.   As the above referenced conduct complained of in this complaint of said Product Defendants, and DOES 1 through 400, and each of them, and their officers, directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and said Product Defendants, and each of them, inclusive, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of plaintiff JOHN HUKKANEN and of workers exposed to asbestos and asbestos products, such that, plaintiffs, for the sake of example, and by way of punishing said defendants, seeks punitive damages according to proof.

**THIRD CAUSE OF ACTION**

**STRICT LIABILITY IN TORT**

**(Against All Product Defendants and DOES 1 through 400)**

42.   Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of paragraphs 1 through 41 above, inclusive.

43.   At all times mentioned herein, the Product Defendants, and each of them, manufactured, fabricated, designed, developed, labeled, assembled, distributed, supplied, leased, bought, offered for sale, sold, inspected, serviced, repaired, installed, demolished,

- 25 -

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

contracted for installation, contracted others to install, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised asbestos and/or products containing asbestos and/or products which created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos fibers, and that asbestos and/or products containing asbestos and/or products which created an asbestos hazard and/or safety equipment intended to block the entry of asbestos fibers were defective in that they were not as safe as an ordinary consumer of such products would expect; and that the gravity of the potential harm resulting from the use of the defective products of the Product Defendants, and each of them, and the risk of said asbestos and asbestos-containing products outweighed any benefit of the said defendants' design, when safer alternative designs and materials existed and were available that could and should have been substituted and used instead of the deadly asbestos, including providing adequate warning of such potential harm.

44.    At all times mentioned herein, the Product Defendants, and each of them, were aware of the dangerous and defective nature of asbestos and asbestos-containing products when they were used in their intended or reasonably foreseeable manner.

45.    The Product Defendants, and each of them, placed said asbestos products on the market, knowing the asbestos-containing products would be used without inspection for such defects and unsafe conditions, and that said defendants nonetheless took no action to warn or otherwise protect exposed persons, including plaintiff, who foreseeably would be exposed to these defective and inadequately labeled asbestos and asbestos-containing products.

46.    The asbestos and asbestos-containing products, components and assemblies of the Product Defendants, and each of them, were substantially the same as when they left said defendants' possession.

47.    The aforementioned asbestos and asbestos-containing products of the Product Defendants, and each of them, were used by plaintiff and exposed persons in the manner for which they were intended or in a manner that was or would be reasonably foreseeable; and

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

that plaintiff JOHN HUKKANEN was exposed to said asbestos and asbestos-containing products in a manner foreseeable to said defendants.

48.     The dangers inherent in breathing asbestos-containing dust and the dangers inherent in asbestos-containing products, components and assemblies were unknown and unforeseeable to plaintiff JOHN HUKKANEN, and plaintiff had not been advised or informed by anyone that he could contract any disease, sickness or injury as a result of working in the vicinity of asbestos.

49.     The failure to warn by and the product defect in the asbestos and asbestos-containing products of Product Defendants, and each of them, were substantial factors and a legal cause of plaintiff JOHN HUKKANEN's injuries and damages thereby sustained by plaintiffs, and that said defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of plaintiff JOHN HUKKANEN, and that such intentional acts and omissions were substantial factors in causing his disease and injuries.

50.     As a direct and proximate result of the aforesaid conduct of said Product Defendants, and each of them, plaintiff JOHN HUKKANEN suffered severe and permanent injuries to his person, and plaintiff suffered damages as alleged above.

51.     In particular, plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said Product Defendants, and DOES 1 through 400, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known, each of the acts set forth here causing his disease and injuries.  As the above referenced conduct complained of in this complaint of said Product Defendants, and DOES 1 through 400, and each of them, and their officers, directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and said Product Defendants, and each of them, inclusive, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the

- 27 -

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1  rights, safety, and welfare of plaintiff JOHN HUKKANEN and of workers exposed to

2  asbestos and asbestos products, such that, plaintiffs, for the sake of example, and by way of

3  punishing said defendants, seeks punitive damages according to proof.

4  <u>FOURTH CAUSE OF ACTION</u>

5  <u>PREMISES OWNER/CONTRACTOR LIABILITY</u>

6  (Against All Premises Defendants and DOES 1 through 400)

7  52.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth

8  at length herein, all of the allegations of paragraphs 1 through 51 above, inclusive.

9  53.    Plaintiff JOHN HUKKANEN entered, performed work and was otherwise on

10  or about the premises of **ATLANTIC RICHFIELD COMPANY; CHEVRON U.S.A.**

11  **INC.** (sued individually and as successor-in-interest to GULF OIL CORPORATION,

12  TEXACO, INC., THE TEXAS COMPANY, STANDARD OIL COMPANY OF

13  CALIFORNIA and GETTY OIL COMPANY); **CONOCOPHILLIPS COMPANY**

14  individually and as successor in interest and successor by merger to CONOCO, INC.,

15  PHILLIPS PETROLEUM COMPANY, TOSCO CORPORATION and TOSCO REFINING

16  COMPANY, INC., and DOES 1 through 400, and each of them, inclusive (hereafter

17  "Premises Defendants"), including performing that which was to defendants' benefit and

18  advantage and at defendants' request and invitation.   In so doing, plaintiff JOHN

19  HUKKANEN was exposed to dangerous asbestos fibers.

20  54.    At all times herein mentioned, the Premises Defendants, and each of them,

21  were the owners, lessors, operators, managers, general contractors, subcontractors or

22  otherwise controlled and maintained certain premises or portions thereof, on which asbestos

23  and asbestos-containing products were fabricated, constructed, manufactured, mixed,

24  processed, milled, crushed, dumped, piled, disposed of, installed, maintained, used, repaired,

25  replaced or otherwise disturbed (hereafter "use(d), handl(ed)(ing) or disturb(ed)(ance)") by

26  their own workers and/or by various contractors, so as to allow and cause and as a result,

27  dangerous airborne asbestos fibers were present on and about said premises while and/or

28

- 28 -

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1    prior to the times plaintiff JOHN HUKKANEN was present creating a hazardous condition
2    upon said premises.

3        55.   At all times herein mentioned, the Premises Defendants, and each of them,
4    knew, or in the exercise of ordinary and reasonable care should have known, that the
5    contractors and/or subcontractors hired and/or retained were not competent, that the premises
6    in their control would be used as alleged without knowledge of, or inspection for, defects or
7    dangerous conditions and that the persons working on or using said premises would not be
8    aware of the aforesaid hazardous conditions on the premises to which they were exposed.

9        56.   At all times mentioned herein, the Premises Defendants, and each of them,
10   negligently failed to maintain, manage, inspect, survey, or control said premises, or to abate
11   or correct, or to warn plaintiff JOHN HUKKANEN of the existence of the aforesaid
12   dangerous conditions and hazards on said premises.

13       57.   At all times herein mentioned, the Premises Defendants, and each of them,
14   knew, negligently and carelessly used asbestos-containing products in construction and
15   renovation, hired contractors or subcontractors, created and/or approved building,
16   specifications, supervised or failed to supervise contractors and subcontractors, researched or
17   failed to research, tested or failed to test, warned or failed to warn, failed to recall or retrofit,
18   labeled or failed to label, failed to provide protection for, failed to provide a safe work place,
19   failed to provide adequate safety measures, devices and equipment, failed to provide
20   adequate ventilation, failed to provide adequate signs, used asbestos-containing products in
21   construction and renovation and failed to provide sufficient protection to plaintiff from
22   hazards of asbestos, the danger of which said defendants were aware.

23       58.   At all times herein mentioned, the asbestos-containing products, including but
24   not limited to, asbestos-containing building materials and products to be used, handled
25   and/or disturbed on the premises of Premises Defendants, and each of them, caused personal
26   injuries to users, consumers, workers and others, including plaintiff JOHN HUKKANEN,
27   while being used, removed and/or handled in a manner reasonably foreseeable, thereby
28

1  rendering these premises unsafe and dangerous to consumers, users, bystanders or workers

2  exposed thereto, including plaintiff JOHN HUKKANEN.

3       59.    At all times herein mentioned, the Premises Defendants, and each of them,

4  knew and could foresee that asbestos and asbestos-containing products used, handled and/or

5  disturbed on the said defendants' premises, and the asbestos dust, debris, fiber and

6  particulate released from the same, created an unreasonable risk of harm to persons entering

7  upon or present near or about the premises of said defendants.

8       60.    At all times herein mentioned, the Premises Defendants, and each of them,

9  knew and could reasonably foresee, or in the exercise of ordinary care should have known,

10  that said premises would be entered by persons, including plaintiff JOHN HUKKANEN,

11  without knowledge of, or inspection for, defects or dangerous conditions and that said

12  persons would not be aware of the aforesaid unreasonable risk of harm.

13       61.    At all times herein mentioned, the Premises Defendants, and each of them,

14  knew and reasonably could foresee, or in the exercise of ordinary care should have known,

15  that the asbestos dust, debris, fiber and particulate released into the ambient air on and about

16  the premises of said defendants generated from the same above-described use, handling

17  and/or disturbance of the asbestos and asbestos-containing products, including asbestos-

18  laden waste derived from the premises of said defendants, was dangerous and created an

19  unreasonable risk of harm to persons entering upon or being present near or about the

20  premises of said defendants.

21       62.    At all times herein mentioned, the Premises Defendants, and each of them, had

22  a duty to disclose the presence of, and the dangers and hazards presented by and associated

23  with the asbestos-containing products and the asbestos fibers released and generated from the

24  same above-described use, handling and/or disturbance thereof on and about the premises of

25  said defendants.

26       63.    At all times herein mentioned, the Premises Defendants, and each of them, had

27  a duty to disclose the presence of, and the dangers and hazards presented by and associated

28  with the asbestos dust, debris, fiber and particulate released into the ambient air on and about

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

the premises of said defendants, including asbestos-laden waste derived from the premises of said defendants.

64. At all times herein mentioned, the Premises Defendants, and each of them, had a duty to properly remove and/or abate said asbestos at these facilities before or during his presence, but failed to do so. The unreasonably dangerous conditions at these facilities was of such a nature and existed long enough so that it was, or reasonably should have been, discovered and corrected by a premises owner using reasonable care.

65. At all times herein mentioned, plaintiff was continuously exposed to asbestos and asbestos-containing dust while on or about the premises of the Premises Defendants without the provision of appropriate safeguards by said defendants who had the duty responsibility for such.

66. Despite the knowledge by the Premises Defendants, and each of them, of the aforesaid risks of harm from asbestos and asbestos products generally, and from the asbestos dust, debris, fiber and particulate in the ambient air on or about the premises of said defendants generated from the same above-described use, handling and/or disturbance of asbestos and asbestos-containing products on and about the premises of said defendants, said Premises Defendants, and each of them, failed to disclose or warn persons forseeably exposed to asbestos, including plaintiff, of those asbestos hazards and dangers.

67. Plaintiff JOHN HUKKANEN was unaware of the risk of harm created by the aforesaid presence of asbestos products and materials on said premises of the Premises Defendants, and each of them; and plaintiff was also unaware of the unreasonable risk of harm created by the aforesaid dangerous asbestos dust, debris, fiber and particulate in the ambient air on and about the premises of said defendants.

68. At all times herein mentioned, the Premises Defendants, and each of them, retained control of the work and negligently failed to implement, and/or failed to have others implement, proper safety precautions, and/or the use of proper work practices to guard against those asbestos hazards on the premises of said defendants thereby creating an

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

unreasonable risk of harm to persons entering or being on, about or around said asbestos-contaminated premises.

69. Despite said knowledge, defendants, including Premises Defendants, and each of them, misrepresented that their premises were safe and free of defects, and/or failed to disclose, and concealed, the presence of the asbestos dust, debris, fiber and particulate in the ambient air on or about the premises of said defendants generated from the same above-described use, handling and/or disturbance of asbestos and asbestos-containing products on and about the premises of said defendants, including asbestos-laden waste derived from the premises of said defendants, thereby creating an unreasonable risk of harm to persons entering said premises and other exposed persons, including plaintiff.

70. In reliance upon the foregoing acts, omissions and representations, plaintiff JOHN HUKKANEN entered and was present upon and/or performed work on said premises of the Premises Defendants, and each of them, which was to defendants' benefit and advantage and at defendants' request and invitation; whereupon there was dangerous asbestos dust, debris, fiber and particulate in the ambient air as a result of the same above-described use, handling and/or disturbance of asbestos and asbestos-containing products on and about the premises of said defendants, including asbestos-laden waste derived from the premises of said defendants. In so doing, plaintiff was exposed to dangerous asbestos fibers for which Premises Defendants are liable.

71. At all times herein mentioned, despite the knowledge by the Premises Defendants, and each of them, of the aforesaid risk of harm from asbestos and/or asbestos products on or from its premises, said defendants retained control of the work and negligently failed to implement, and/or failed to have others implement, proper safety precautions, and/or the use of proper work practices to guard against those asbestos hazards from the same above-described use, handling and/or disturbance of asbestos and/or asbestos products on or from said defendants' premises creating an unreasonable risk of harm to persons entering or being on, about or around said asbestos-contaminated premises.

72.   At all times herein mentioned, the Premises Defendants, and each of them, were aware and knew of the dangers associated with breathing asbestos containing dust, and that users of asbestos and asbestos products, as well as persons entering or being on, about or around the premises who would be exposed to asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos could cause injury, and said Premises Defendants knew that the users of asbestos and asbestos-containing products, as well as persons entering or being on, about or around the premises who were exposed to asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to human life; and intended to instill a false security about the safety of the premises.

73.   The Premises Defendants, and each of them, knew and failed to disclose that plaintiff JOHN HUKKANEN and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer, and knew and failed to disclose that inhalation of asbestos would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians such that physicians could not examine, diagnose and treat those who were exposed to asbestos, including plaintiff.

74.   Despite said Premises Defendants knowledge of the substantial risks associated with exposure to asbestos, willfully and knowingly concealed and actively suppressed and promoted the suppression from all consumers and persons entering or being on said premises, including plaintiff JOHN HUKKANEN, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom in conscious disregard of the rights, safety and welfare of users, consumers, workers, persons working on around the premises or living with persons entering or being on, about or around said asbestos-contaminated premises.

75.   Rather than attempting to protect, or warn persons entering or being on, about or around the premises, the high risk of injury or death resulting from exposure to asbestos

- 33 -

EXHIBIT B

## AFFIDAVIT OF J. THOMAS SCHROPPE IN SUPPORT OF FOSTER WHEELER'S NOTICE OF REMOVAL

I, J. Thomas Schroppe, being under penalty of perjury, declare and say:

1.      I am a 1962 graduate of the New York State Maritime College with a degree in Marine Engineering. For three months in 1962, I worked as a Third Assistant Engineer for American Export Lines. I began my career at Foster Wheeler in 1962 as a Proposal Engineer in the Marine Department. As a Proposal Engineer, I was responsible for taking shipyard specifications and designing a boiler to meet the thermal performance and physical requirements of those specifications. In 1967, I became the Manager of the Proposal Department and reviewed all proposals. In 1977, I was promoted to Vice President of Engineering at which point I supervised both proposal and contract execution activities. From 1978 to 1982, I was President of Foster Wheeler Boiler Corporation. In 1982, I became Managing Director of Foster Wheeler U.K. From 1984 to my retirement in 1999, I was Executive Vice President of Foster Wheeler Power Systems.

2.      I am personally familiar with the degree of supervision and control exercised by the Navy and its agencies in procurement contracts with Foster Wheeler for boilers and auxiliary equipment because I was personally involved in such contracts at all the various stages of development, from inquiry and bid through production, testing, and sea trials and, ultimately, acceptance.

3.      I submit this affidavit to attest to the degree of involvement, supervision, direction and control exercised by the U.S. Navy and its authorized agents and officers in connection with procurement contracts with Foster Wheeler for equipment to be installed aboard U.S. Naval vessels. The following paragraphs describe the contract process from the perspective of Foster Wheeler as the vendor, as well as the levels of interaction between Foster Wheeler and the Navy agents and personnel through the various stages of a given contract.

4.      Foster Wheeler furnished and fabricated marine propulsion boilers and related auxiliary systems for U.S. Navy, Maritime Commission, and Coast Guard ships under contract between Foster Wheeler and the shipyards and/or the United States Navy Department and its authorized agencies, officers and personnel (hereafter collectively referred to as the "Navy").

5.      The Navy was responsible for all phases of the design of a vessel, which was accomplished by the Naval architect. Specifically, the Naval architect would prepare the ship design which involved the entire vessel, including the machinery space, and all performance requirements. In general, the ship design for any given class of ship would be contained in a Ship Specification ("Ship Spec") which covers all aspects of the vessel including the machinery space. As it relates to the boiler, the Ship Spec would cover all boiler operating criteria, performance requirements, and maximum physical dimension of the boiler(s). In general, the Ship Spec was written and prepared by the naval architect and approved by the Navy and, in the course of its projects with the Navy, Foster Wheeler was required to design, fabricate and furnish equipment which complied strictly with the requirements in the Ship Spec.

6.      In addition to the Ship Spec, Foster Wheeler was also obligated to comply with Military Specifications ("Mil Specs") which cover all specific components of the boiler, including

accessories, subcomponents, and materials required to fabricate the boilers and its components.

7.      The normal process by which Foster Wheeler sold marine boilers and economizers to the Navy first involved receipt and response to an inquiry from either BuShips (Bureau of Ships) or the shipyard, depending on the Navy's procurement process. The boiler inquiry would be assigned to a proposal engineer at Foster Wheeler's marine department who would review the inquiry, which consisted of the Ship Spec and the associated drawings, for the performance requirements and size limitations of the boiler.

8.      The performance requirements are contained in the specifications, namely MIL-B18381 and the Ship Spec, which must be followed. I must point out that deviations from these specs were not acceptable as the boiler is just one piece of the entire power plant which was designed by BuShips or by a designated naval architecture firm such as Gibbs and Cox. In addition, the Foster Wheeler proposal engineer was aware that these requirements would be tested during the sea trials, so all calculations had to precisely conform with the Ship Spec.

9.      During the proposal phase, Foster Wheeler would prepare design drawings and related materials in conformance with the Ship Spec (which included performance specs and size limitations) and other requirements contained in MIL-B-18381 which was the Mil Spec pertaining to Naval propulsion boilers. I am personally familiar with the MIL-B-18381 as I saw it and referred to it throughout my career at Foster Wheeler. Foster Wheeler would prepare a proposal drawing and proposal specification that would outline the design and scope of material and equipment contained in the proposal. The boiler proposal submitted by Foster Wheeler would incorporate the specific requirements set forth in the Ship Spec and MIL-B18381.

10.     Approximately half way through the proposal process, information is forwarded to Foster Wheeler's estimating department to start to prepare an estimate of the boiler cost. In parallel, the proposal engineer starts calling vendors to obtain quotes for the various boiler accessories such as burners, sootblowers, gage glasses, safety valves, etc. All Navy approved vendors were asked to provide a quotation for the material in accordance with the Mil Spec covering their equipment or product.

11.     The finished boiler proposal consisted of an approximately 25 page booklet, a proposal drawing and an offering letter to the entity requesting a proposal so stating that the offering was in accordance with the Ship Spec and all required Mil Specs.

12.     The boiler proposal would be reviewed by the shipyard with the understanding that the proposed design, prepared specifically for the Navy in accordance with the Ship Spec. at issue, conformed to all appropriate specifications stated above. Once final price negotiations were complete, the contract was awarded to Foster Wheeler.

13.     The boiler specifications would provide detailed requirements for the boiler and economizer and would always reference the boiler Mil Spec (MIL-B-18381) which dictated very specific material requirements such as:

(a)     Boiler, superheater and economizer tubes: Type of tube, tube diameter, tube thickness, material, and tensile strength.

(b)     Refractory and Insulation: Specification identified the material, arrangement of various bricks and insulating materials on various boiler walls and provided specific Mil Specs for each type of insulating/refractory material.

(c)     Boiler accessories: All accessories applied to the boiler, such as burners, safety valves, soot blowers, must conform to a specific Navy Mil Spec for each such component.

14.     At receipt of an order the same Foster Wheeler proposal engineer is assigned the project as a contract engineer which will entail a more detailed recalculation of the thermal performance for the boiler. In addition, calculations of all the pressure drops, design of drum de-superheaters and final selection of all boiler accessories are made. All this work will be double checked by the head of engineering. In parallel, the contract engineer will commence discussions with the contract design department who will make all the drawings required for both manufacture, for submission to the shipyard and the Navy for review and approval. Foster Wheeler would not commence production of the boilers until the Navy issued final approval of these contract drawings. The approved drawings prepared during this phase would eventually be incorporated into the technical manuals.

15.     The contract design department also provides the material requisitions to the purchasing department so they may procure materials in accordance with Mil Specs. With regard to procurement of insulating and refractory material, the specific requirements for insulation and refractory items are listed in MIL-B-18381, which then references additional Mil Specs for each specific type of refractory/insulating material required. Foster Wheeler's procurement process would involve the purchasing department contacting the vendor and requesting a quotation for the material. The Foster Wheeler purchase order would reference the appropriate Mil Spec for each item shipped. The vendor, in turn, would supply materials that conformed to the Mil Spec and ship it directly to the shipyard. Finished products such as burners, sootblowers, and all refractory and insulating materials, etc. are shipped direct to the shipyard so they may be incorporated into the final boiler erection. Upon arrival at the shipyard, there would be a receipt inspection to ensure what was on bill of materials was delivered.

16.     During manufacture of the boiler, a Navy resident inspector was present at Foster Wheeler's shops. The Navy inspector would review all fabrication processes, welding procedures, pressure part welding, and all weld x-rays for conformity to Mil Specs. The inspector would also ensure that all materials used at this stage, e.g., steel, flanges, tubes, etc., conformed to applicable Mil Specs. All manufacturing was performed to drawings which had been reviewed and approved by the Navy.

17.     Once individual components (e.g., headers, tubes, pressure parts) were manufactured, inspected by a Foster Wheeler quality control inspector, and inspected and stamped with approval by the resident Navy inspector, the materials/components were moved to the shipping area. At this point, the boiler fabrication was complete, though the boilers were in a "knocked down" condition (unassembled) for shipment. The economizers were always shop assembled since they could be shipped by rail. The boiler components and related materials were wrapped and/or boxed in accordance with Mil Specs relating to packaging and shipment of materials, which is also referred to in Mil Spec MIL-B-18381.

18.     The knocked down boilers are then shipped from Foster Wheeler's facility to the shipyard for assembly. For those not familiar with Naval propulsion boilers, they are simply too large and heavy to be shipped assembled. The assembly is done by shipyard workers with a Foster Wheeler employee on site to interpret drawings and answer questions that may arise during the assembly process. Resident Navy inspectors also witness the boiler assembly process.

19.     A critically important inspection item is the hydrostatic test put on the boiler after complete assembly of the pressure parts. This test is a water pressure test of the boiler at 50% over the boiler design pressure. At this point, leaks, even small ones, are not acceptable to the Navy. Formal written acceptance at this stage by the Navy inspector is a requirement. The boilers now sit idle in the ship as the remainder of the engine room and the balance of the ship are being completed. It is at this point that all the engine room piping is connected to the various connections on the boiler. Following the piping tests (shipyard responsibility) the shipyard insulates all piping up to the boiler casings.

20.     Upon completion of the vessel by the shipbuilder, dock trials start to test the various machinery systems in the engine room. The boilers are run at low power since the main turbine cannot be run very fast at the dock because any higher powers would tear the ship loose from the pier. Full power testing is done during sea trials where all aspects of the boiler performance are thoroughly tested. Foster Wheeler would send a service engineer to witness these tests and answer any questions which may arise. Foster Wheeler frequently sent the contract engineer on the first ship of a new class to obtain first-hand data on the boiler performance. Sea Trials were performed on every ship and formal approval by the head Navy inspector was required. Any punch list items which were identified had to be corrected before final acceptance of the boilers.

21.     In addition to the above design, manufacture and testing there remains an obligation by Foster Wheeler to provide technical manuals for the boilers and economizers furnished in a given Navy contract. The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers such as engineering drawings, test reports and other technical data that could be used as needed by shipboard engineering officer during the life of the equipment. The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent

directed by the Navy.

22.     Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy.  Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed this 18th day of December, 2009 at Newark, New Jersey.

_J. Thomas Schroppe_
J. Thomas Schroppe

THE STATE OF NEW JERSEY

ESSEX COUNTY                              )

Personally appeared before me this 18th day of December, 2009, J. Thomas Schroppe, who made oath that the statements contained in the affidavit above are true and correct to the best of his knowledge.

Subscribed and sworn to before me this 18th day of December, 2009.

My commission expires 11/9/2010

Notary Public

MARIAN P. TIGHE-KRUSHINSKY
Notary Public of New Jersey
My Commission Expires 11/9/2010

*Hukkanan, John & Mary*
United States District Court, Central District of California
Case No. _____

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of 18 years, and not a party to the within action.  My electronic notification address is service@HUGOPARKER.com and my business address is 135 Main Street, 20th Floor, San Francisco, California 94105.  On the date below, I served the following:

**DEFENDANT FOSTER WHEELER LLC'S NOTICE OF REMOVAL**

on the following:

PLAINTIFFS' COUNSEL                DEFENSE COUNSEL
Weitz & Luxenberg, P.C.            See CM/ECF Service List
1880 Century Park East Suite 700
Los Angeles, CA 90067
Fax:  (310) 786-9927

**X**   By transmitting electronically via CM/ECF the document(s) listed above as set forth on the electronic service list on this date before 5:00 p.m.

I declare under penalty of perjury that the above is true and correct. Executed on March 22, 2017, at San Francisco, California.

Mary Pat Marcus

1